Judge Karen A. Overstreet
Chapter 7
Hearing Location:   Seattle, WA
Hearing Date:       June 25, 2010
Hearing Time:       9:30 a.m.
Response Date:      June 18, 2010

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re<br><br>MELINDA A. MAXWELL,<br><br>                Debtor.<br>_____<br><br>UNITED STATES TRUSTEE,<br><br>                Plaintiff,<br>vs.<br><br>MELINDA A. MAXWELL,<br><br>                Defendant. | Case No. 09-17198-KAO<br><br><br><br><br>Adv. Proc. No. 09-01486-KAO<br><br>STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON SECOND, FOURTH, AND FIFTH CLAIMS FOR RELIEF, AND FOR PARTIAL SUMMARY JUDGMENT ON FIRST, THIRD, SIXTH, AND SEVENTH CLAIMS FOR RELIEF, IN COMPLAINT OBJECTING TO DISCHARGE |

The following factual statements are believed to be uncontroverted or incontrovertible. The statements are supported by evidence as cited herein and/or are evidenced by the Court's docket and files in this case, with regard to which the Court may take judicial notice under Fed. R. Evid. 201:

A.    <u>Facts Relating to Both Dr. Maxwell's and CWC's Bankruptcy Cases</u>

1.    On July 21, 2009, Defendant, Melinda A. Maxwell ("Dr. Maxwell"), filed in this Court a voluntary petition under chapter 7 of the Bankruptcy Code under Case No. 09-17198-KAO

STATEMENT OF UNCONTROVERTED
FACTS - 1

("Dr. Maxwell's Chapter 7 Case"). Ronald G. Brown was appointed to serve as chapter 7 trustee. Complaint Objecting to Debtor's Discharge, Docket No. 1, Adv. Proc. No. 09-01486-KAO ("Complaint"), ¶ 6; Declaration of Judith Auten in Support of United States Trustee's Motion for Summary Judgment and for Partial Summary Judgment ("Auten Decl."), Exhibit A ("Answer"), ¶ 4, and Exhibit B.

2. At all times relevant to this adversary proceeding, Dr. Maxwell was or is President and sole shareholder of Chiropractic Wellness Center P.S., Inc. ("CWC"), a Washington corporation, which operates a chiropractic clinic in Newcastle, Washington. Complaint, ¶ 7; Answer, ¶ 5.

3. At all times relevant to this adversary proceeding, Dr. Maxwell was or is an insider of CWC, and CWC was or is an insider of Dr. Maxwell, within the meaning of 11 U.S.C. §§ 101(31) and 727(a)(7). Complaint, ¶ 8; Answer, ¶ 6.

4. On July 23, 2009, CWC filed in this Court a voluntary petition under chapter 11 of the Bankruptcy Code under Case No. 09-17276-KAO (CWC's Chapter 11 Case). Complaint, ¶ 9; Answer, ¶ 7; Auten Decl., Exhibit C.

5. The Debtor and CWC were initially represented in their respective bankruptcy cases by Dr. Maxwell's husband, Thomas F. McGrath, Jr., a bankruptcy attorney. Mr. McGrath withdrew from his representation of Dr. Maxwell and CWC in their respective bankruptcy cases, effective August 20, 2009, due to conflicts of interest. Auten Decl., Exhibits B and C; Docket No. 40, Dr. Maxwell's Chapter 7 Case; Docket No. 34, CWC's Chapter 11 Case.

6. Prior to the filing of Dr. Maxwell's Chapter 7 Case and CWC's Chapter 11 Case, on November 14, 2008, creditor Dr. Katherine Ellison ("Dr. Ellison") obtained a judgment against Dr. Maxwell individually, the marital community of Dr. Maxwell and Mr. McGrath, CWC, and Chiropractic Wellness Center at Capitol Hill P.S., Inc. ("CWC Capitol Hill"), another Washington corporation wholly owned by Dr. Maxwell, in the total amount of $475,896.24 plus post-judgment interest at 12 percent per annum, in Case No. 05-2-05569-3 SEA, in King County Superior Court, effective *nunc pro tunc* to October 30, 2008 ("Ellison Judgment"). Auten Decl., Exhibit D. The

STATEMENT OF UNCONTROVERTED
FACTS - 2

Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, Washington 98101-1271
(206) 553-2000

Ellison Judgment was entered following a jury verdict in favor of Dr. Ellison, entered July 14, 2008. Auten Decl., Exhibit E.

      7.     Prior to the filing of Dr. Maxwell's Chapter 7 Case and CWC's Chapter 11 Case, on or about June 30, 2009, Dr. Ellison obtained post-judgment writs of garnishment, which she served in early July on Banner Bank and Bank of America, at which Dr. Maxwell and CWC maintained financial accounts. Motion for Order to Release Garnishment Funds and Declaration in Support of Motion to Release Garnishment Funds, filed August 11, 2009, Docket Nos. 18 and 20, Dr. Maxwell's Chapter 7 Case; Motion for Order to Release Garnishment Funds and Declaration in Support of Motion to Release Garnishment Funds, filed August 12, 2009, Docket Nos. 28 and 30, CWC's Chapter 11 Case.

    B.     <u>Facts Relating Primarily to Dr. Maxwell's Chapter 7 Case</u>

      8.     On July 21, 2009, Mr. McGrath filed on behalf of Dr. Maxwell in Dr. Maxwell's Chapter 7 Case her original bankruptcy schedules, statement of financial affairs, and Chapter 7 Statement of Current Monthly Income and Means-Test Calculation (Form B22A), together with the petition, which Dr. Maxwell signed under penalty of perjury. Complaint, ¶ 13; Answer, ¶ 11; Auten Decl., Exhibit B.

      9.     Dr. Maxwell failed to identify Mr. McGrath as her non-filing spouse anywhere on her original schedules, statement of financial affairs, and Form B22A, which Mr. McGrath himself prepared and filed on her behalf. Auten Decl., Exhibit B.

      10.    Dr. Maxwell also failed to disclose Mr. McGrath's occupation, employment, or income on her original Schedule I, failed to disclose Mr. McGrath's current monthly income on her original Form B22A, and failed to disclose Mr. McGrath's current monthly expenses on her original Schedule J. Auten Decl., Exhibit B.

      11.    At the United States Trustee's request, Dr. Maxwell amended her Form B22A and Schedules I and J on July 28, 2009, to disclose Mr. McGrath's occupation, employment, income, and expenses, although Dr. Maxwell did not at that time amend her bankruptcy schedules or

STATEMENT OF UNCONTROVERTED FACTS - 3

statement of financial affairs to identify Mr. McGrath by name. Auten Decl., Exhibits F, G, and H. The United States Trustee requested Dr. Maxwell to provide further documentation of her income and her non-filing spouse's income, but Dr. Maxwell failed to provide such information. Auten Decl., Exhibit H.

12. Dr. Maxwell's original Schedule A listed as her separate property a condominium at 1805 - 12th Avenue West, Seattle, Washington, with a value of $250,000, subject to secured claims totaling $400,500. Auten Decl., Exhibit B.

13. Dr. Maxwell's original Schedule B listed personal property with a total value of $356,900, including a bank account at Banner Bank with a balance of $175, jewelry valued at $1,000, Dr. Maxwell's 100% interest in CWC valued at $10, her 50% interest in M & T Investments, LLC ("M & T"), valued at $10, a state court counterclaim against Coopersmith Law Group valued at $150,000, and an exempt IRA account with a balance of $200,000. Auten Decl., Exhibit B.

14. Dr. Maxwell's original Schedule B did not list any community or jointly-owned property or any property in which Mr. McGrath had an interest as of the date of filing of Dr. Maxwell's petition, except for M & T and a state court counterclaim against Coopersmith Law Group valued at $150,000. Auten Decl., Exhibit B.

15. Dr. Maxwell's original Schedule D listed four secured claims on her condominium, including a first mortgage in favor of Wells Fargo Home Mortgage in the amount of $90,000, a second mortgage in favor of Olympic Mortgage Lending Corporation in the amount of $185,000, a third mortgage in favor of The McGrath Corporation, Mr. McGrath's law firm, in the amount of $75,000, and a fourth mortgage in favor of Peick & Conniff P.S., Inc., in the amount of $50,000. Auten Decl., Exhibit B.

16. Dr. Maxwell's original Schedule I, Form B22A, and statement of financial affairs did not list any current monthly income for Dr. Maxwell or any income for 2007, 2008, and 2009 (year-to-date). Auten Decl., Exhibit B.

Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, Washington 98101-1271
(206) 553-2000

17. Dr. Maxwell's original statement of financial affairs no. 8 disclosed no losses from fire, theft, or other casualty or gambling within one year prior to filing of the petition or since the commencement of the case. Auten Decl., Exhibit B.

18. Dr. Maxwell's original statement of financial affairs no. 10 disclosed no transfers of property within two years prior to filing of the petition. Auten Decl., Exhibit B.

19. On August 18, 2009, the Court entered an order authorizing Dr. Ellison to conduct a Rule 2004 examination of Dr. Maxwell and to compel production of documents pursuant to Bankruptcy Rules 2004(c) and 9016. Austen Decl., Exhibit I. Pursuant to that order, counsel for Dr. Ellison issued a subpoena and amended subpoena compelling the production of documents by Dr. Maxwell. Auten Decl., Exhibit I.

20. On August 20, 2009, the Court entered an order authorizing the chapter 7 trustee to conduct a Rule 2004 examination of Dr. Maxwell. Docket No. 39, Dr. Maxwell's Chapter 7 Case.

21. On August 24, 2009, after Mr. McGrath had withdrawn from his representation of Dr. Maxwell in her chapter 7 case (on August 20, 2009), Dr. Maxwell filed amended schedules, statement of financial affairs, and Form B22A. Auten Decl., Exhibit J.

22. On August 25, 2009, the chapter 7 trustee for Dr. Maxwell conducted a section 341 meeting of creditors in Dr. Maxwell's chapter 7 case. At that meeting, Dr. Maxwell testified under oath that she read and signed her bankruptcy petition, schedules, and statements, that those documents were true and correct to the best of her knowledge, and that she listed all of her assets and debts. Auten Decl., Exhibit K, page 5, line 20, through page 6, line 20. Dr. Maxwell testified that she had recently filed federal income tax returns for 2006-2008, but she did not file such tax returns prior to filing her petition. Auten Decl., Exhibit K, page 7, line 17, through page 8, line 12.

23. At the direction of Mr. McGrath, who attended the section 341 meeting with Dr. Maxwell, Dr. Maxwell left the meeting before it was concluded allegedly because the chapter 7 trustee had declined Dr. Maxwell's request for a continuance of the meeting, effectively preventing Dr. Ellison's attorney from examining Dr. Maxwell at the meeting. As a result, the trustee continued

STATEMENT OF UNCONTROVERTED FACTS - 5

the section 341 meeting to September 11, 2009, consolidating the continued meeting with the trustee's Rule 2004 examination. Auten Decl., Exhibit K, page 15, line 24, through page 18, line 15.

24. At the continued section 341 meeting/Rule 2004 examination of Dr. Maxwell conducted by the chapter 7 trustee on September 11, 2009, at which Dr. Maxwell was represented by substitute counsel and counsel for the United States Trustee and for Dr. Ellison also participated, Dr. Maxwell testified under oath that her schedules and statements, as amended on August 24, 2009, were true and correct to the best of her knowledge. Auten Decl., Exhibit L, page 10, line 22, through page 11, line 15. Dr. Maxwell's counsel advised the trustee that Dr. Maxwell would be filing shortly further amendments to her schedules and statements, but Dr. Maxwell did not file these amendments until October 6, 2009. Auten Decl., Exhibit L, page 6, lines 5-10, and Exhibit M.

25. At the continued section 341 meeting/Rule 2004 exam, Dr. Maxwell further testified as follows:

    a. Dr. Maxwell admitted that she had a prepetition insurance claim as a result of water damage to her condominium in June 2009, which she had not disclosed previously on her bankruptcy schedules or statement of financial affairs, and that she had received postpetition a payment from her insurance company of approximately $55,000, which was deposited in The McGrath Corporation's trust account; Auten Decl., Exhibit L, page 18, line 4, through page 28, line 14;

    b. Dr. Maxwell admitted that after Dr. Ellison had garnished her bank accounts and bank accounts for CWC in early July 2009, Dr. Maxwell transferred prepetition to The McGrath Corporation's trust account funds in excess of $8,000 from Dr. Maxwell's (non-IRA) investment account at Wells Fargo Bank (formerly Wachovia Bank), which she used for payment of CWC's payroll; she further stated that she signed Mr. McGrath's name on trust account checks for payroll, although she herself was not a signatory on that account; Auten Decl., Exhibit L, page 33, line 7, through page 37, line 7, and page 63, line 5, through page 64, line 19;

STATEMENT OF UNCONTROVERTED
FACTS - 6

Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, Washington 98101-1271
(206) 553-2000

      c.      Dr. Maxwell admitted that she sold two diamond rings prepetition following the trial with Dr. Ellison for approximately $7,000 and $2,000 respectively; and Dr. Maxwell testified that these rings were valued at $55,000 on a financial statement that she gave to Banner Bank in February 2004; Auten Decl., Exhibit L, page 37, line 19, through page 44, line 6, and Exhibit N;

      d.      Dr. Maxwell admitted that she signed the promissory note and deed of trust for the alleged $185,500 secured claim of Olympic Mortgage Lending Corporation listed on her original Schedule D on or about July 15, 2008, one day after the jury verdict was entered against her, CWC, and CWC Capitol Hill in the state court litigation with Dr. Ellison, that the loan was never funded and is not a valid debt, and that nonetheless she took no action at any time to release the deed of trust in favor of Olympic Mortgage Lending Corporation; Auten Decl., Exhibit L, page 72, line 24, through page 76, line 5, and Exhibit O; Olympic Mortgage Lending Corporation is a fictitious name for The Wakefield Group, LLC, which is wholly owned by Mr. McGrath; Auten Decl., Exhibit P; Terrell McGrath, Mr. McGrath's former spouse, was the escrow agent for this transaction, through her escrow company, McGrath Escrow, which shares office space with The McGrath Corporation; Auten Decl., Exhibit L, page 74, line 23, through page 75, line 14;

      e.      Dr. Maxwell testified that she also signed on or about July 15, 2008, the promissory note and deed of trust for the alleged $75,000 secured claim of The McGrath Corporation listed on her original Schedule D, for attorney's fees that Mr. McGrath allegedly incurred on her behalf in the state court litigation with Dr. Ellison; Mr. McGrath is the sole stockholder of The McGrath Corporation; Auten Decl., Exhibit L, page 76, line 10, through page 81, line 20, and Exhibit Q;

      f.      Dr. Maxwell testified that she also signed on or about July 15, 2008, on behalf of CWC Capitol Hill, a promissory note for an alleged $75,000 debt of CWC Capitol Hill to The McGrath Corporation, for attorney's fees that Mr. McGrath allegedly incurred on behalf of CWC Capitol Hill in the state court litigation with Dr. Ellison, and that she could not recall if she had also

STATEMENT OF UNCONTROVERTED
FACTS - 7

signed a (UCC) security agreement at that time, although she had in fact done so; Auten Decl., Exhibit L, page 82, line 1, through page 83, line 17, and Exhibit R; and

      g.    Dr. Maxwell admitted that in October 2008, she sold CWC Capitol Hill, which formerly operated a chiropractic clinic in Seattle, Washington, to Dr. Calvin G. Mulanax for $50,000, although she did not disclose this sale on her bankruptcy schedules or statement of financial affairs. Auten Decl., Exhibit L, page 83, line 18, through page 91, line 11, and Exhibit S.

26.    At the continued 341 meeting/Rule 2004 examination, counsel for the chapter 7 trustee requested that Dr. Maxwell produce to the trustee a number of additional documents including bank statements, copies of signed and filed tax returns for 2006-2008, documents regarding Dr. Maxwell's insurance claim and an accounting of any insurance claim proceeds, The McGrath Corporation's attorney trust account records for the year prior to filing, documents regarding M & T's sale of a Bayliner boat in June 2008 and purchase of a 59-foot Stevens yacht in 2004, The McGrath Corporation's billing statements to and fee agreements with Dr. Maxwell, CWC, and CWC Capitol Hill from 2005 through the present and any related payment records, and documents regarding Dr. Maxwell's sale of CWC Capitol Hill to Dr. Mulanax. Auten Decl., Exhibit L, page 16, line 21, through page 17, line 20; page 27, line 24, through page 28, line 14; page 35, line 17, through page 36, line 14; page 59, lines 11-14; page 65, lines 4-20; page 68, lines 12-20; page 78, lines 10-14; page 83, lines 2-10; page 90, line 20, through page 91, line 9; and page 104, line 15, through page 106, line 18; and Exhibit T (Exhibit 2 to Volume II).

27.    At Dr. Ellison's Rule 2004 examination of Dr. Maxwell on September 11 and September 17, 2009, Dr. Maxwell confirmed that she had not produced many of the documents requested in Dr. Ellison's amended subpoena to Dr. Maxwell dated August 27, 2009, issued pursuant to the Court's August 18, 2009 Rule 2004 order, and requested by counsel for the chapter 7 trustee at the continued section 341 meeting/Rule 2004 examination on September 11, 2009, responding in many instances that Dr. Ellison would need to obtain those documents from Mr. McGrath or from Dr. Maxwell's accountant, Cathy Silva. Auten Decl., Exhibit T, page 4, line 16,

STATEMENT OF UNCONTROVERTED
FACTS - 8

Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, Washington 98101-1271
(206) 553-2000

through page 7, line 25; page 34, line 12, through page 36, line 25; page 43, lines 2-17; page 74, lines 20-24; and page 77, lines 18-23.

28. On September 22, 2009, the Court entered an order granting Dr. Ellison's motion for sanctions against Dr. Maxwell and Mr. McGrath for alleged discovery violations in Dr. Maxwell's chapter 7 case, including Dr. Maxwell's refusal to obey the Court's August 18, 2009 Rule 2004 order authorizing Dr. Ellison to issue a subpoena for production of documents by Dr. Maxwell ("Sanctions Order"). Auten Decl., Exhibits U and V.

29. In the Sanctions Order, the Court found expressly that Dr. Maxwell and Mr. McGrath had acted in bad faith to impede the discovery process by repeatedly failing to produce relevant documents requested by Dr. Ellison and not cooperating or being forthcoming with testimony at Rule 2004 examinations and section 341 meetings, resulting in Dr. Ellison's incurring significant time and expense in attempting to discover the withheld information from other sources and having had to appear repeatedly at various examinations to continue her questioning. Auten Decl., Exhibit V.

30. As a result of these findings, the Court imposed a monetary sanction of $1,500 against Mr. McGrath, The McGrath Corporation, and Dr. Maxwell, jointly and severally, payable to Dr. Ellison's counsel, and ordered Dr. Maxwell to produce to counsel for Dr. Ellison, not later than September 23, 2009, any and all documentation relating to Dr. Maxwell's insurance claim, car insurance policies, the sale of CWC Capitol Hill to Dr. Mulanax, M & T's sale of a Bayliner boat in June 2008, the purchase and sale of real property in France in 2007, the transfer of funds by Dr. Maxwell and/or her marital community into or out of The McGrath Corporation's trust account from September 2005 through the present, and the scheduled secured debt of $75,000 owed by Dr. Maxwell to The McGrath Corporation. The Court also ordered Dr. Maxwell to produce to counsel for Dr. Ellison copies of signed and filed federal and state personal income tax returns for 2006-2008. Auten Decl., Exhibit V.

31. On September 23, 2009, in response to the Sanctions Order, Mr. McGrath served on

Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, Washington 98101-1271
(206) 553-2000

counsel for Dr. Ellison copies of documents identified in the Declaration of Thomas F. McGrath, Jr., filed September 25, 2009. Auten Decl., Exhibit W.

33. On September 24, 2009, counsel for Dr. Ellison filed a Supplemental Reply Declaration of Attorney Atwood Re Documents Received on September 23, 2009 from Debtor ("Supplemental Reply Declaration"), advising the Court that the documents produced by Mr. McGrath on September 23, 2009, were incomplete and not in compliance with the Sanctions Order. Auten Decl., Exhibit X. As a result, for example, Dr. Ellison was unable to determine the disposition of substantial funds that Dr. Maxwell and CWC transferred to The McGrath Corporation's trust account in the year before filing. Auten Decl., Exhibit X, Summary of Production, pages 6-7. Counsel for Dr. Ellison further alleged in the Supplemental Reply Declaration that the billing records and fee agreements produced by Mr. McGrath in response to the Court's order were not genuine business records, but rather they were fabrications prepared after the Court ordered Dr. Maxwell to produce such records, and that counsel for Dr. Ellison personally witnessed Dr. Maxwell's accountant, Cathy Silva, typing up alleged billing records in her office on September 21, 2009. Auten Decl., Exhibit X, Summary of Production, pages 4-5.

33. Significantly, the documents that Mr. McGrath produced to Dr. Ellison's counsel on September 23, 2009, in response to the Sanctions Order reflect as follows:

a. M & T sold in June 2008 a 45-foot Bayliner boat for $188,500 and a 43-foot Bayliner boat for $160,000 and received net proceeds of at least $5,641.76, although these transfers were not disclosed on Dr. Maxwell's schedules or statement of financial affairs; Auten Decl., Exhibit Y;

b. M & T owned on the date of filing, and currently owns, a 59-foot Stevens yacht, subject to a secured debt in favor of Banner Bank with a balance of $383,552.64, as of September 9, 2009; M & T purchased this vessel in July 2004 for $450,000; and the vessel is currently insured for $450,000; Auten Decl., Exhibit Z;

c. Dr. Maxwell's homeowner's insurance includes coverage for personal

STATEMENT OF UNCONTROVERTED
FACTS - 10

property totaling $174,500, although her Schedule B, as amended, lists tangible personal property with a total value of only $8,800; Auten Decl., Exhibit AA;

        d. Dr. Maxwell and/or Mr. McGrath own a 1995 Lexus SC 400 automobile, which is not disclosed on Dr. Maxwell's schedules; Auten Decl., Exhibit BB;

        e. Approximately $15,000 was withdrawn from Dr. Maxwell's investment account at Wells Fargo Bank (then Wachovia Bank) and deposited into The McGrath Corporation's attorney trust (IOLTA) account, Bank of America account no. xxxx7218, on February 26, 2009; at least 8 checks totaling $16,864.04 were written on the trust account for the benefit of Dr. Maxwell from February 26, 2009, through May 11, 2009; at least $15,110.66 in business receipts of CWC were deposited into the trust account from July 7, 2009, through August 5, 2009; $8,615.92 was withdrawn from Dr. Maxwell's investment account at Wells Fargo Bank and deposited into the trust account on July 13, 2009; and at least 32 checks totaling $29,606.65 were written on the trust account for the benefit of CWC and/or Dr. Maxwell from July 5, 2009, through August 20, 2009; but the trust account and other bank records provided by Mr. McGrath are incomplete and not in full compliance with the Sanctions Order; Auten Decl., Exhibit CC; and

        f. Dr. Maxwell received from The Hartford insurance company payments totaling $79,762.98 on her prepetition insurance claim from July 7, 2009, through August 11, 2009 (including a prepetition payment of $7,000 on July 7, 2009), although she failed to disclose the insurance claim as an asset on her original and first amended schedules and failed to disclose her receipt of these funds at her initial section 341 meeting on August 25, 2009; and in September 2009, from these funds, Dr. Maxwell, through Mr. McGrath, made payments to prepetition creditors City Moving Services, Inc., and Servpro, and a prepayment to McBride Construction for repair work not yet performed, totaling $71,306.19. Auten Decl., Exhibit B, Exhibit J, Exhibit K, page 14, lines 4-24, and Exhibit DD.

34. Subsequently, on October 6, 2009, Dr. Maxwell further amended her schedules and statement of financial affairs as follows:

STATEMENT OF UNCONTROVERTED
FACTS - 11

a. Schedules A and C were amended to disclose insurance proceeds of $50,000 for water damage to Dr. Maxwell's condominium and to claim an exemption in such property;

b. Schedules B and C were amended to disclose a Foresters Insurance Policy with a value of $951 as Mr. McGrath's separate property and to claim an exemption in such property;

c. Schedule B was amended to disclose miscellaneous household goods with a value of $2,500 as Mr. McGrath's separate property;

d. Statement of financial affairs no. 1 was amended to disclose gross income of $4,053 for 2007, $3,115 for 2008, and $12,824 for 2009 (year-to-date); and

e. Statement of financial affairs no. 8 was amended to disclose the water damage to Dr. Maxwell's condominium in June 2009. Auten Decl, Exhibit M.

C. Facts Relating Primarily to CWC's Chapter 11 Case

35. On July 23, 2009, Mr. McGrath filed on behalf of CWC in CWC's Chapter 11 Case its original bankruptcy schedules and statement of financial affairs, together with the petition, which Dr. Maxwell signed under penalty of perjury on behalf of CWC. Complaint, ¶ 43; Answer, ¶ 42; Auten Decl., Exhibit C.

36. CWC's original Schedules A and B listed no real property and personal property with a total value of $208,521, including checking accounts at Banner Bank with a balance of $1 and accounts receivable of $25,000. Auten Decl., Exhibit C.

37. CWC's original Schedule D listed a secured claim in favor of The McGrath Corporation in the amount of $75,000. Complaint, ¶ 45; Answer, ¶ 44; Auten Decl., Exhibit C.

38. CWC's original statement of financial affairs no. 1 disclosed no income from operation of the business for 2007, 2008, or 2009 (year-to-date). Auten Decl., Exhibit C.

39. CWC's original statement of financial affairs no. 3(b) disclosed no payments to creditors within 90 days prior to the filing of its petition. Auten Decl., Exhibit C.

Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, Washington 98101-1271
(206) 553-2000

40. CWC's original statement of financial affairs no. 3(c) disclosed no payments within one year prior to the filing of its petition to creditors who are or were insiders. Auten Decl., Exhibit C.

41. CWC's original statement of financial affairs no. 10 disclosed no transfers of property within two years prior to the filing of its petition. Auten Decl., Exhibit C.

42. CWC's original statement of financial affairs no. 21(b) disclosed no officers or directors of the corporation and no stockholders holding 5 percent or more of the voting or equity securities of the corporation. Auten Decl., Exhibit C.

43. CWC's original statement of financial affairs no. 23 disclosed no withdrawals or distributions credited or given to an insider during one year prior to filing of CWC's petition. Auten Decl., Exhibit C.

44. On August 24, 2009, CWC, through its substitute counsel, filed an amended petition, schedules, and statement of financial affairs, which included the following:

    a. Schedule B was amended to disclose three Banner Bank accounts with balances totaling $13,331.69, $2,416.69, and $2,447.92, respectively; Auten Decl., Exhibit EE;

    b. Schedule B was further amended to disclose that CWC's accounts receivable had a face value of $111,987.77, although CWC believed them to be worth only $25,000; Auten Decl., Exhibit EE;

    c. Statement of financial affairs no. 10 was amended to reflect that CWC granted to The McGrath Corporation a security interest in all of CWC's assets on January 16, 2009; Auten Decl., Exhibits EE and FF;

    d. Statement of financial affairs no. 1 was amended to disclose gross income from the operation of CWC's business of $265,986 for 2006, $269,746 for 2007, and $272,098 for 2008, although income for 2009 (year-to-date) was not disclosed; Auten Decl., Exhibit EE;

    e. Statement of financial affairs no. 3(b) was amended to disclose some payments to creditors within 90 days prior to filing, but this list is incomplete; Auten Decl., Exhibits

STATEMENT OF UNCONTROVERTED
FACTS - 13

CC and EE; and

  f. Statement of financial affairs no. 21(b) was amended to disclose that Dr. Maxwell was President and sole stockholder of CWC and that Mr. McGrath was Secretary of CWC, as of the date of filing of CWC's petition. Auten Decl., Exhibit EE.

 45. On August 25, 2009, the United States Trustee conducted a section 341 meeting of creditors in CWC's chapter 11 case. At that meeting, Dr. Maxwell testified under oath on behalf of CWC that CWC's amended bankruptcy schedules and statements were true and correct to the best of her knowledge, but she admitted that there were errors in CWC's original bankruptcy documents. Auten Decl., Exhibit GG, page 4, line 18, through page 5, line 24.

 46. At CWC's section 341 meeting, Dr. Maxwell testified under oath as follows:

  a. CWC opened a new bank account at HomeStreet Bank postpetition in August 2009; Auten Decl., Exhibit GG, page 8, line 2, through page 9, line 9;

  b. CWC deposited monies into The McGrath Corporation's trust account in July 2009 and used funds from that account for operating purposes; Auten Decl., Exhibit GG, page 9, line 10, through page 10, line 5; and

  c. CWC had made no payments to insiders, including The McGrath Corporation, within one year prior to filing CWC's petition. Auten Decl., Exhibit GG, page 30, line 18, through page 31, line 4.

 47. Subsequently, on October 9, 2009, CWC further amended its schedules and statement of financial affairs as follows:

  a. Schedule B was amended to list a checking account at HomeStreet Bank, account no. xxxxxx0213, which CWC did not disclose on its original or first amended Schedule B; this account was opened prepetition on July 17, 2009, with an initial deposit of $3,500 from The McGrath Corporation's trust account (check no. 1809), although Dr. Maxwell testified falsely at CWC's section 341 meeting that the account was opened postpetition; Auten Decl., Exhibit CC, Bates No. 511, Exhibit GG, page 8, lines 4-14, and Exhibit HH;

STATEMENT OF UNCONTROVERTED
FACTS - 14

Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, Washington 98101-1271
(206) 553-2000

    b.  Schedule B was also amended to list The McGrath Corporation's trust account as an account of CWC, although the trust account appears to have been used improperly as an operating account for CWC following Dr. Ellison's garnishment of CWC's Banner Bank accounts in July 2009; Auten Decl., Exhibits CC and HH; and

    c.  Statement of financial affairs no. 3(c) was amended to list a payment of $250 from CWC to The McGrath Corporation on December 8, 2008. Auten Decl., Exhibit HH.

DATED this 28th day of May, 2010.

                  Respectfully submitted,

                  ROBERT D. MILLER JR
                  Acting United States Trustee

                  /s/ William L. Courshon
                  William L. Courshon, WSBA # 20468
                  Attorney for Plaintiff, United States Trustee

<u>Certificate of Service</u>

I certify under penalty of perjury that on the date I filed this document on ECF I caused a copy to be served by U.S. mail on Marc S. Stern, Esq., Attorney for the Defendant, 1825 N.W. 65th Street, Seattle, WA 98117.

                  /s/ William L. Courshon

STATEMENT OF UNCONTROVERTED
FACTS - 15